Andrew A. KACZYNSKI, Appellant,

v.

MISSOURI BOARD OF PROBATION
AND PAROLE, Respondent.

No. WD 72972.

Missouri Court of Appeals,
Western District.

June 21, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 2, 2011.

Application for Transfer Denied
Oct. 25, 2011.

Andrew A. Kaczynski, Cameron, MO, Appellant, pro se.

Chris Koster, Attorney General, Terrence M. Messonnier, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division II: JAMES M. SMART, JR., Presiding Judge, and MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

MARK D. PFEIFFER, Judge.

Andrew Kaczynski ("Kaczynski") appeals from the judgment of the Circuit Court of Cole County, Missouri ("trial court") granting the Missouri Board of Probation and Parole's ("Board") Motion for Judgment on the Pleadings on Kaczynski's Petition for Declaratory Judgment. We affirm.

## Facts and Procedural History[1]

Kaczynski was convicted of voluntary manslaughter and armed criminal action and was sentenced to fifteen years on the voluntary manslaughter charge and to ten years on the armed criminal action charge, with the sentences to run consecutively. He is currently serving his fifteen-year sentence for voluntary manslaughter. A parole hearing was held November 4, 2009. Kaczynski was subsequently notified that parole had been denied because release would have depreciated the seriousness of his offenses and that a reconsideration hearing was scheduled for November 2014.

Kaczynski filed a Petition for Declaratory Judgment, presenting five arguments as to why the denial of parole was in error. All five arguments were premised on Kaczynski's claim that the seriousness of his crimes was an improper factor for the Board to consider. The Board filed a Motion for Judgment on the Pleadings, arguing that the seriousness of an inmate's crimes was a proper factor for the Board to consider. The trial court granted the Board's Motion for Judgment on the Pleadings and entered judgment for the Board. Kaczynski appeals.

## Standard of Review

On appeal from the trial court's grant of a motion for judgment on the pleadings,

we review the allegations of the petition to determine whether the pleaded facts were insufficient as a matter of law. *Dykes v. Mo. Dep't of Corr.*, 325 S.W.3d 556, 558 (Mo.App. W.D.2010). We uphold the grant of judgment on pleadings where, taking the facts alleged in the opposing party's petition as true, the moving party was entitled to judgment as a matter of law. *Id.*

## Analysis

Kaczynski raises five points on appeal. In each point, Kaczynski claims that the Board's denial of parole violated his due process rights. We address this claim first.

Due process protects liberty interests. U.S. CONST. amend. XIV, § 1; Mo. CONST. art. I, § 10. Section 217.690.1 creates no protected liberty interest in parole release for due process purposes because the statute uses discretionary language: "the board *may in its discretion* release or parole" an offender. *State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133, 135 (Mo. banc 1995) (emphasis added). Because the statute creates no justifiable expectation of release, the Board has "almost unlimited discretion" in deciding whether to grant parole release. *Id.* A prisoner has no constitutional or inherent right to early release from prison before the expiration of a valid sentence. *Id.* at 134. Therefore, Kaczynski's due process claim is without merit.

## Point I: Statutory Interpretation

In Point I, Kaczynski argues that the trial court erred in granting the Board's Motion for Judgment on the Pleadings in that sections 217.690.1 and

---

1. On appellate review of the trial court's grant of motion for judgment on the pleadings, we take the facts alleged in the opposing party's petition as true. *Dykes v. Mo. Dep't of Corr.*, 325 S.W.3d 556, 558 (Mo.App. W.D. 2010).

217.690.2, when read together,[2] create a legitimate expectation that if the Board determines that an offender will be a law-abiding citizen and not a detriment to society or himself, then parole *must* be granted. Under Kaczynski's interpretation, section 217.690.2 *requires* that the Board *only* consider factors relating to the status of an offender's rehabilitation as a law-abiding citizen. He suggests that when sections 217.690.1 and 217.690.2 are read together, they limit the Board's discretion. We disagree.

Resolution of Kaczynski's argument requires us to interpret sections 217.690.1 and 217.690.2. "The primary object of statutory interpretation is to ascertain the intent of the legislature from the language used, and to give effect to that intent." *Ridinger v. Mo. Bd. of Prob. & Parole,* 189 S.W.3d 658, 664 (Mo.App. W.D.2006). Statutes are construed consistent with the obvious purpose of the legislature. *United Asset Mgmt. Trust Co. v. Clark,* 332 S.W.3d 159, 167 (Mo.App. W.D.2010). In ascertaining that purpose, it is appropriate for us to consider the history of the statute. *Id.*

In 1981, the predecessor to section 217.690, former section 549.261, was held by the Eighth Circuit Court of Appeals in *Williams v. Missouri Board of Probation & Parole,* 661 F.2d 697 (8th Cir.1981) (*superceded by statute § 217.690, as recognized in Maggard v. Wyrick,* 800 F.2d 195 (8th Cir.1986)), to create a liberty interest in parole if certain statutory conditions were satisfied. Section 549.261 stated:

When in its opinion there is reasonable probability that the prisoner can be released without detriment to the community or to himself, the board *shall* release on parole any person confined in any correctional institution administered by state authorities.

(Emphasis added.) In 1982, presumably in response to the court's ruling in *Williams,* the Missouri legislature repealed section 549.261 and substituted section 217.690, which stated, in pertinent part:

When in its opinion there is reasonable probability that an inmate of a state correctional institution can be released without detriment to the community or to himself, the board *may in its discretion* release or parole such person....

(Emphasis added.) Following subsequent amendments, section 217.690, RSMo Cum. Supp.2010, currently states, in pertinent part:

When in its opinion there is reasonable probability than an offender of a correctional center can be released without detriment to the community or to himself, the board *may in its discretion* release or parole such person except as otherwise prohibited by law.

(Emphasis added.) Section 217.690 and its regulations do not provide a liberty interest in parole. *Cavallaro,* 908 S.W.2d at 135. The primary distinction between the two statutes is that once the Board determined that the condition (that the inmate could be released without detriment to the community or to himself) was met, the

---

**2.** Section 217.690 reads in relevant part:

1. When in its opinion there is reasonable probability that an offender of a correctional center can be released without detriment to the community or to himself, the board may in its discretion release or parole such person except as otherwise prohibited by law....

2. ... A parole shall be ordered only for the best interest of society not as an award of clemency; it shall not be considered a reduction of sentence or a pardon. An offender shall be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen.

former parole statute (§ 549.261) mandated that the Board "shall" release or parole the inmate, whereas the current statute (§ 217.690) states that the Board "may in its discretion" release or parole the inmate. *State ex rel. Shields v. Purkett*, 878 S.W.2d 42, 44 (Mo. banc 1994). The mandatory language of "shall" in the former statute was the determining factor in the Eighth Circuit's holding that a liberty interest had been created in parole once the statutory requirements were satisfied. *Cavallaro*, 908 S.W.2d at 135. The current statute, which changed the statutory language of "shall" to "may," has been held to have created no liberty interest in parole. *Id.*

Undeterred, Kaczynski argues that the discretion of section 217.690.1 is removed by section 217.690.2.

To do so, however, would require us to ignore the rules of statutory construction that " 'every word, clause, sentence, and provision of a statute' must be given effect," *Anderson ex rel. Anderson v. Ken Kauffman & Sons Excavating, L.L.C.*, 248 S.W.3d 101, 108 (Mo.App. W.D.2008) (quoting *Civil Serv. Comm'n v. Bd. of Aldermen*, 92 S.W.3d 785, 788 (Mo. banc 2003)), and that "[i]t is 'presumed that the legislature did not insert idle verbiage or superfluous language in a statute.' " *Id.* (quoting *Civil Serv. Comm'n*, 92 S.W.3d at 788).

To support Kaczynski's interpretation that parole is *mandatory* when an offender is able and willing to be a law-abiding citizen, Kaczynski would, in effect, have us rewrite section 217.690.2 by deleting the word "only" in the statutory language ("An offender shall be placed on parole *only* when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen." (emphasis added)). This we cannot do. Instead, under our required rule of statutory construction, the word "only" in section 217.690.2 is pre-sumed to have effect. The language does not mandate that parole be granted *when* an offender is able and willing to be a law-abiding citizen; instead, parole may *only* be granted when an offender is able and willing to be a law-abiding citizen. The ability and willingness of an offender to be a law-abiding citizen is simply a necessary *pre-condition* that must be satisfied before parole can even be considered by the Board in its discretion.

Furthermore, statutory provisions are not to be read in isolation; instead, " 'we construe the provisions of a legislative act together and read a questioned phrase in harmony with the entire act.' " *Clark*, 332 S.W.3d at 167 (quoting *Keylien Corp. v. Johnson*, 284 S.W.3d 606, 609 (Mo.App. E.D.2009)). Likewise, interpretations that lead to unreasonable, oppressive, or absurd results are avoided. *Id.* We must construe sections 217.690.1 and 217.690.2 together with the other provisions in the statute. Section 217.690.4 gives the Board the authority to create requirements that must be met before offenders are eligible for parole. *Anselmo v. Mo. Bd. of Prob. & Parole*, 27 S.W.3d 831, 833 (Mo.App. W.D. 2000) (then § 217.690.3). In the rules promulgated by the Board governing the granting of paroles, one of the reasons justifying the Board's decision *not* to set a parole date is that "[r]elease at this time would depreciate the seriousness of the offense committed or promote disrespect for the law." Bd. of Prob. & Parole, Mo. Dep't of Corr., PROCEDURES GOVERNING THE GRANTING OF PAROLES AND CONDITIONAL RELEASES 8 (Apr.2009). Furthermore, section 217.690.10 clearly provides that "[n]othing in this section shall be construed to *require* the release of an offender on parole." (Emphasis added.)

In *State ex rel. Mitchell v. Dalton*, the court read the provisions of sections

217.690.1 and 217.690.2 together to characterize the Board's role as follows:

> The Board is granted discretion to release an offender on parole "[w]hen in its opinion there is reasonable probability that an offender ... can be released without detriment to the community or himself ...", § 217.690.1; the Board may order parole only in the best interest of society, § 217.690.2; and the Board may place the offender "on parole only when the [B]oard believes that he is able and willing to fulfill the obligations of a law-abiding citizen." *Id.* Thus, the Board, in effect, represents society and determines what is in society's best interest.

831 S.W.2d 942, 944 (Mo.App. E.D.1992).

Stated another way, the statutory language of sections 217.690.1 and 217.690.2 is descriptive of the general societal factors and principles that the Board considers; there is nothing in the statute's language that restricts the Board's discretionary consideration of those general factors or mandates that parole be granted if certain factors are satisfied.

Kaczynski's contention that if the Board concludes he is able and willing to fulfill the obligations of a law-abiding citizen, the Board is precluded from considering the seriousness of his crimes and possesses no discretion other than to grant parole, is an erroneous interpretation of section 217.690.

Point I is denied.

In his next three points on appeal, Kaczynski argues that he was denied parole based on the seriousness of his offense in violation of his due process rights in that consideration of this factor:

- is precluded because it was considered by other "authorities" or branches of government (Point II);
- is precluded by the Double Jeopardy Clause (Point III); and
- constitutes unlawful "double counting" (Point IV).

## Point II: Separation of Powers

In Point II, Kaczynski relies on *State ex rel. Lute v. Missouri Board of Probation & Parole*, 218 S.W.3d 431 (Mo. banc 2007), to support his argument that the trial court erred in granting the Board's Motion for Judgment on the Pleadings in that the Board cannot consider the seriousness of the offense as a valid basis for denying release because that factor was already considered by other branches of government (i.e. the legislature in enacting sentencing legislation and the judicial system during the sentencing process). However, *Lute* does not stand for that proposition.

The specific issue in *Lute* was the effect of the governor's commutation of the sentences of two prisoners who had been convicted of murdering their husbands. *Id.* at 435. After the commutations, the Board denied the inmates parole for the reason that release would depreciate the seriousness of the offense. *Id.* at 433–34, 435. The inmates filed petitions for writs of habeas corpus. *Id.* at 434, 435. The *Lute* court interpreted the commutations by giving effect to the governor's intent. *Id.* In the commutations and affidavits, the governor explicitly stated that, in coming to his commutation decision, he considered the circumstances of each case; deemed that the release would *not* depreciate the seriousness of the offense; and did not intend that the Board, in considering parole, would re-examine the same factors that he did when granting clemency. *Id.* at 435–36. The *Lute* court, in part, justified its mandamus order to the Board not to reconsider any of the factors attested to by the governor in his affidavit when conducting the parole hearing by stating: "To ignore the Governor's expressed intent ...

would amount to a derogation of the Governor's constitutional authority to exercise grace under article IV, section 7." *Id.* at 436.

Thus, *Lute*'s holding is limited to the specific fact situation of parole consideration following a grant of clemency by the governor. Nothing in the *Lute* decision calls into question the settled Missouri law that it is appropriate for the Board to consider the seriousness of the offense in determining whether a prisoner will be released for parole. *See Cavallaro*, 908 S.W.2d at 136; *Cooper v. Mo. Bd. of Prob. & Parole*, 866 S.W.2d 135, 138 (Mo. banc 1993); *Delay v. Mo. Bd. of Prob. & Parole*, 174 S.W.3d 662, 666 (Mo.App. W.D.2005); *Epperson v. Mo. Bd. of Prob. & Parole*, 81 S.W.3d 540, 545 (Mo.App. W.D.2002); *Gettings*, 950 S.W.2d 7, 11 (Mo.App. W.D. 1997); *Cole v. Mo. Bd. of Prob. & Parole*, 947 S.W.2d 124, 125 (Mo.App. W.D.1997).

Kaczynski does not allege that he is similarly situated to the petitioners in *Lute;* his sentence has not been commuted by the governor upon consideration of the factors enumerated in *Lute.* Thus, *Lute* is not applicable to Kaczynski's factual or procedural situation.

Point II is denied.

### Point III: Double Jeopardy

■ In Point III, Kaczynski asserts that the trial court erred in granting the Board's Motion for Judgment on the Pleadings because he was subjected to double jeopardy when the Board denied him parole based on the seriousness of his offense. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment,

guarantees that no person shall be subject for the same offense to be twice put in jeopardy of life and limb. The Double Jeopardy Clause " 'contains two distinct protections for criminal defendants: (a) protection from successive prosecutions for the same offense after either an acquittal or a conviction and (b) protection from multiple punishments for the same offense.' " *State v. Daws*, 311 S.W.3d 806, 808 (Mo. banc 2010) (quoting *State v. Flenoy*, 968 S.W.2d 141, 143 (Mo. banc 1998)).

*Gettings v. Missouri Department of Corrections*, 950 S.W.2d 7 (Mo.App. W.D. 1997), is controlling on this issue. Gettings was convicted of voluntary manslaughter and armed criminal action and was denied parole on the grounds that his release would depreciate the seriousness of his offense. *Id.* at 8. As one issue on appeal, Gettings argued that the reason the Board gave for denying parole subjected him to double jeopardy. *Id.* at 10. The court found his argument meritless, noting that "double jeopardy cannot be implicated by the denial of parole" because the denial of parole is not a second conviction or a second sentence for the original offense. *Id.* at 11. Thus, Kaczynski's argument that the Board's denial of parole violated the Double Jeopardy Clause is without merit.

■ In this same context, Kaczynski also raises a collateral estoppel argument.[3] Although there is a collateral estoppel effect attributed to the Double Jeopardy Clause, it operates to bar the state from bringing a later prosecution for a separate offense *only* where the state has lost an earlier prosecution involving the same facts. *State v. White*, 931 S.W.2d 825, 828 (Mo.App. W.D.1996) (citing *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25

**3.** "Currently, the more descriptive term 'issue preclusion' is often used in lieu of 'collateral estoppel.' " *Yeager v. United States*, 557 U.S. 110, 129 S.Ct. 2360, 2367 n. 4, 174 L.Ed.2d 78 (2009).

L.Ed.2d 469 (1970)). Kaczynski was not the prevailing party in the trial and sentencing phases; therefore, collateral estoppel is inapplicable.

Point III is denied.

### Point IV: "Double Counting"

■ In Point IV, Kaczynski claims that the trial court erred in granting the Board's Motion for Judgment on the Pleadings because the Board impermissibly "double counted" in basing the denial of parole on the same factors that were considered to establish parole risk and eligibility. To support his argument, Kaczynski cites *Caporale v. Gasele*, 940 F.2d 305 (8th Cir.1991), and *Briggs v. United States Parole Commission*, 736 F.2d 446 (8th Cir.1984). Both cases were appeals from denials of habeas relief.

Caporale brought a habeas petition seeking relief from the United States Parole Commission's decision setting his parole eligibility date. *Caporale*, 940 F.2d at 306. As one issue, Caporale claimed that the Parole Commission "double counted" by using the same factors to depart from the guidelines as it did to establish the offense severity level. *Id.* at 307. The court acknowledged that "[d]ouble counting violates the Parole Act," citing *Briggs*, but found that Caporale's claim was meritless in that the reasons given for the departure differed from those given for setting the severity level. *Id.*

In his appeal from a denial of habeas relief, Briggs argued that the United States Parole Commission's denial of his request for parole was unlawful, thereby requiring him to unlawfully serve his sentence to expiration. *Briggs*, 736 F.2d at 447. The basis for the court's reversal was that the Parole Commission failed to

provide Briggs with a statement of the reasons for its departure from the parole guidelines as required by federal statute. *Id.* at 447–48. The *Briggs* court also noted that "the factors which the [C]ommission recited in determining Briggs' offense severity and salient factor score may not also be utilized as justification for deviating from the guidelines." *Id.* at 450.

We find *Caporale* and *Briggs* are factually and legally distinct from Kaczynski's situation and are not persuasive in our review of this point.

First, the context of both cases was the *federal* sentencing and parole system that was in effect prior to the enactment of the 1984 Comprehensive Crime Control Act. This Act included the Sentencing Reform Act of 1984, which created the United States Sentencing Commission and instructed the Commission to promulgate sentencing guidelines for the federal courts. United States Sentencing Commission, *Guidelines Manual* Ch. 1, Pt. A (Nov. 1, 2010) (hereinafter, "USSG").

Prior to the November 1, 1987 implementation of federal sentencing guidelines, federal crimes typically carried broad statute-defined ranges of possible penalties, and "sentencing judges had discretion to choose the penalty within the statutory range they felt would best achieve the purposes of sentencing." United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing* xviii (Nov.2004). Under this "indeterminate" sentencing system, if prison time was ordered, the time actually served depended only partly on the sentence imposed by the judge because release dates generally were determined by the United States Parole Commission. *Id.* Except for five categories of offenders,[4] Congress abolished parole for

---

4. Since the decision to abolish the Parole Commission in the Comprehensive Crime Control Act of 1984, Congress has given the Parole Commission ongoing responsibilities

offenses that occurred after November 1, 1987. Thus, Kaczynski's analogy of the current Missouri *state* parole system to the former *federal* parole system is misplaced.

The Federal Sentencing Guidelines were intended to curtail judicial and Parole Commission discretion. *Id.* at 2. "[T]he abolition of parole makes the sentence imposed by the court the sentence the offender will serve . . . ." USSG Ch. 1, Pt. A. Under the "determinate" sentencing of the Federal Sentencing Guidelines, sentences are based on a pairing of offense level and criminal history. USSG § 1B1.1. To prevent "double counting" of the conduct and harm from each count of conviction, the Federal Sentencing Guidelines prohibit aggregation of quantities from other counts. USSG § 1B1.3, Commentary (Background). Likewise preventing "double counting" is a provision for the grouping of multiple counts arising out of a continuing offense when the offense guideline takes the continuing nature into account. *Id.* The Federal Sentencing Guidelines also establish a procedure to avoid unwarranted "double counting" when determining the offense level on multiple counts. USSG § 3D1.1.

The Missouri *state* parole system is *not* a counterpart of the *federal* system. Unlike the current "determinate" federal sentencing system, Missouri law vests the Board of Probation and Parole with discretion in paroling an offender. § 217.690.1, RSMo Cum.Supp.2010. Thus, Kaczynski's "attempt to find solace in the federal sen-

tencing guidelines does not entitle him to relief. Federal law controls sentencing procedures in violations of United States criminal statutes. Missouri law controls sentencing procedures in violations of Missouri criminal law." *State v. Smith,* 926 S.W.2d 174, 177 (Mo.App. S.D.1996).

Because Missouri law governing sentencing and parole is different from the federal system, we find Kaczynski's "double counting" argument based on the Federal Sentencing Guidelines inapposite. Section 217.690.4 authorizes the Board to adopt rules for determining parole eligibility. *Edger v. Mo. Bd. of Prob. & Parole,* 307 S.W.3d 718, 720 (Mo.App. W.D.2010). The Board has adopted guidelines to be used in considering parole release, using a salient factor scale and time to be served matrices to establish the "customary" range of time to be served before release. Bd. of Prob. & Parole, Mo. Dep't of Corr., PROCEDURES GOVERNING THE GRANTING OF PAROLES AND CONDITIONAL RELEASES 6 (Apr.2009). In making the parole decision, the Board may consider a variety of factors, including the seriousness of the offense, circumstances surrounding the offense, and the length of sentences. *Id.* at 8. Kaczynski has not shown that the Board lacked the statutory authority to adopt the rules it has relied upon in denying parole to Kaczynski.

Point IV is denied.

### Point V: "Seriousness of the Offense"

▆▆▆▆ In Point V, Kaczynski asserts that the trial court erred in granting the

---

for: (1) making prison-term decisions in foreign transfer treaty cases for offenses committed on or after November 1, 1987 (Anti–Drug Abuse Act of 1988); (2) state defendants accepted into the U.S. Marshals Service Witness Protection Program (Anti–Drug Abuse Act of 1988); (3) all remaining indeterminate sentence D.C.Code felony offenders and all new-law D.C.Code determinate sentence felony offenders released on supervised release

(National Capital Revitalization and Self–Government Improvement Act of 1997); (4) the remaining "old-law" indeterminate sentence federal offenders in prison or under supervision; and (5) military code offenders serving sentences in Bureau of Prisons institutions. Peter B. Hoffman, *History of the Federal Parole System* (http://www.justice.gov/uspc/history.htm).

Board's Motion for Judgment on the Pleadings in that the Board's denial of parole based upon the "seriousness of the offense" could be used multiple times as a reason to deny him parole, thereby precluding him from ever being paroled, regardless of his institutional conduct. Kaczynski ignores the Board's finding that "[r]elease *at this time* would depreciate the seriousness of the present offense based on ... circumstances surrounding the present offense." (Emphasis added.) Section 217.690 gives the Board "almost unlimited discretion" in making parole decisions. *Cavallaro,* 908 S.W.2d at 135. While nothing in section 217.690.1 guarantees parole eligibility, the Board has discretion to determine whether release in the future would be appropriate, taking into consideration the seriousness of the crimes committed. "A prisoner has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence." *Fults v. Mo. Bd. of Prob. & Parole,* 857 S.W.2d 388, 392 (Mo. App. W.D.1993). The seriousness of the offense is a valid reason for the Board to deny parole. *Cole,* 947 S.W.2d at 125. Furthermore, it is a legitimate governmental purpose to require prisoners who commit more serious crimes to serve more time in prison. *Cooper,* 866 S.W.2d at 137. The denial of parole to Kaczynski based on the seriousness of his crimes is rationally related to this purpose. *Id.*

Point V is denied.

## Conclusion

Taking the facts alleged by Kaczynski's Petition as true, the Board is entitled to judgment as a matter of law. Thus, the trial court's judgment granting the Board's Motion for Judgment on the Pleadings is affirmed.

JAMES M. SMART, JR., Presiding Judge, and CYNTHIA L. MARTIN, Judge, concur.