

# In the
# Missouri Court of Appeals
# Western District

RICARDO ELLIOTT, )
)
        **Respondent,** ) WD78115
)
v. ) OPINION FILED: May 26, 2015
)
JEFF NORMAN, )
)
        **Appellant.** )

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Daniel R. Green, Judge

Before Division Two: Lisa White Hardwick, Presiding Judge, Victor C. Howard, Judge
and Cynthia L. Martin, Judge

Boonville Correctional Center Warden Jeff Norman ("Warden") appeals a judgment awarding Ricardo Elliott ("Elliott") jail-time credit. Warden argues that the trial court erred by determining that Elliott's custody in Missouri jails after he was sentenced on a federal charge was related to Missouri charges. Warden also argues that the trial court erred by awarding Elliott jail-time credit for time spent in Missouri jails after he was sentenced on his Missouri charges. We affirm in part and reverse in part.

## Factual and Procedural History[1]

The material facts in this case are uncontroverted. On April 15, 1997, Elliott committed the Missouri offenses of first-degree assault, attempted first-degree robbery, and two counts of armed criminal action in St. Louis County ("Missouri charges"). Because Elliott was in possession of a firearm, and was already a felon, he also committed the federal offense of felon in possession of a firearm ("Federal charge").

On May 18, 1997, Elliott was arrested by the St. Louis County Sheriff's Office and detained in the St. Louis County Jail from May 18, 1997, through May 19, 1997, when he was released. After a criminal complaint was filed in the Circuit Court of St. Louis County, a warrant was issued for Elliott's arrest on the Missouri charges on June 3, 1997.

On June 5, 1997, Elliott was indicted on the Federal charge, and a warrant was issued for Elliott's arrest. Elliott was arrested on the Federal charge and confined in the Ste. Genevieve County Jail beginning on June 13, 1997.

On June 17, 1997, the United States District Court for the Eastern District of Missouri ordered that Elliott would not be released on bond from the Ste. Genevieve County Jail pending trial on the Federal charge in part because an arrest warrant was outstanding on the Missouri charges. On June 19, 1997, a St. Louis County grand jury indicted Elliott on the Missouri charges.

Elliott pled guilty to the Federal charge on November 21, 1997, and was sentenced to forty-four months in federal prison. Elliott remained in the Ste. Genevieve County Jail

---

[1] We view the evidence in the light most favorable to the trial court's judgment. *Stevenson v. Aquila Foreign Qualifications Corp*., 326 S.W.3d 920, 924 (Mo. App. W.D. 2010). Here, as noted in the trial court's judgment, the facts material to resolution of Elliott's declaratory judgment action were uncontroverted.

until December 30, 1997, when he was transported to a federal prison in Greenville, Illinois. According to the jail-time endorsement generated by the Ste. Genevieve County Jail, Elliott spent 200 days in the Ste. Genevieve County Jail from June 13, 1997, to December 30, 1997.

On June 9, 1998, Elliott returned to Missouri and was placed in the St. Louis County Jail awaiting trial on the Missouri charges. A jury convicted Elliott of the Missouri charges on January 21, 1999.

On February 26, 1999, the trial court found Elliott to be a prior and persistent offender and sentenced him to twenty years each for first-degree assault and both counts of armed criminal action, and to fifteen years for attempted first-degree robbery, to be served in the Missouri Department of Corrections ("Department"). The trial court ordered all of the sentences to run concurrently with each other and with Elliott's federal sentence. Because Elliott's federal sentence was not yet complete, Elliott was returned to the federal prison in Illinois on March 24, 1999. According to the jail-time endorsement generated by the St. Louis County Jail, Elliott spent 289 days in the St. Louis County Jail from June 9, 1998, through March 24, 1999.

Elliott completed his federal sentence on August 29, 2000. He was transported that day to the St. Louis County Jail for delivery to the Department. According to the jail-time endorsement generated by the St. Louis County Jail, Elliott spent three days in the St. Louis County Jail from August 29, 2000, through August 31, 2000, when he was delivered into the custody of the Department. The Department's records show that Elliott's Missouri sentences commenced on February 26, 1999, the day he was sentenced

3

on the Missouri charges, and not on August 31, 2000, the day he was delivered into the custody of the Department.

In 2005, the Department awarded Elliott 262 days of jail-time credit for the time he spent in the St. Louis County Jail on May 18, 1997, and May 19, 1997, and in 1998 and early 1999 awaiting trial on the Missouri charges. In 2012, the Department rescinded its award of 262 days of jail-time credit and informed Elliott that he would instead receive only 2 days of jail-time credit for the time he spent in the St. Louis County Jail on May 18, 1997, and May 19, 1997.

On July 23, 2013, Elliott filed a petition for declaratory judgment seeking 492 days of jail-time credit for time spent in Missouri jails on the following dates: May 18, 1997, through May 19, 1997; June 12, 1997,[2] through December 30, 1997; June 9, 1998, through March 24, 1999; and August 29, 2000, through August 31, 2000.

On September 12, 2014, just a week before trial, the Department credited Elliott with an additional 163 days of jail-time credit for the time Elliott spent in the Ste. Genevieve County Jail up to the date he was sentenced on the Federal charge (June 13, 1997, through November 21, 1997). By this time, Elliott's fifteen-year sentence for attempted robbery in the first degree had been completed. Though the Department's records were revised to reflect a total of 165 days of jail-time credit against the concurrent twenty-year sentences Elliott was still serving, the Department's records were

---

[2] The jail-time endorsement from the Ste. Genevieve County Jail shows the start date for this term should be June 13, 1997, and not June 12, 1997.

4

not revised to reflect credit for the additional 163 days against the fifteen-year sentence already served.

The Department's records indicate that Elliott's maximum release date is September 13, 2018. This date was calculated by subtracting 165 days from February 26, 2019--the date Elliott's twenty-year sentences would otherwise expire based on a sentence commencement date of February 26, 1999.[3]

The trial court conducted a bench trial on September 19, 2014. Elliott was the only witness. He testified that he believed the time he spent in Missouri jails after his sentencing on the Federal charge was "related to" the Missouri charges because he would not have received the federal sentence without the state sentences. Elliott acknowledged that his Missouri sentences commenced on February 26, 1999, the date he was sentenced on the Missouri charges.

The trial court issued its judgment on September 29, 2014, and ordered the Department to give Elliott all but one day of the jail-time credit he requested ("Judgment").[4] The Judgment reasoned that Elliott's Missouri sentences did not commence on the day he was sentenced, but instead commenced when he was delivered into the custody of the Department "sometime in 2000." The Judgment also reasoned that all of Elliott's time in custody in Missouri jails was "related to" both the Missouri

---

[3] Elliott's petition alleges that the calculation of jail-time credit is important to the timing of his eligibility for parole consideration based on service of 85% of some or all of his twenty-year sentences. We need not address when or if Elliott is entitled to parole consideration, as that is not the subject of the declaratory relief sought by Elliott or awarded by the Judgment.

[4] The Judgment ordered the Department to credit Elliott for all the time he requested except for June 12, 1997, presumably because the jail-time endorsement from the Ste. Genevieve County Jail showed that Elliott was received there on June 13, 1997, and not on June 12, 1997.

charges and the Federal charge requiring "statutory credit [to] be applied to the state offenses" because:

> [T]he elements that constituted [Elliott's] Missouri offenses logically and necessarily established the elements of his federal offense: no Missouri offenses, no federal offense and sentence. So even if the federal offense were the proximate cause of [Elliott's] time spent in the St. Louis County and Ste. Genevieve County jails after November 21, 1997, when he was sentence[d] by the federal court for being a felon in possession, there is no question that the Missouri charges were *related* to that time.
>
> . . .
>
> We are dealing with the same, identical conduct, and elements, constituting the Missouri offenses also constituting the federal offense. Without the Missouri offenses, [Elliott] never could be convicted and sentenced by the federal court for being a felon in possession, and hence never would have served any time in the St. Louis County Jail or the Ste. Genevieve County Jail. Without the Missouri offenses, [Elliott] would have been "free from custody." Pettis v. Missouri Department of Corrections, 275 S.W.3d 313, 318 (Mo. Ct. App. 2008).

(Emphasis in original.)

Warden filed a post-trial motion to alter or amend the Judgment, which the trial court denied.

Warden timely appealed.

## Standard of Review

"In a court-tried case, this court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Murphy v. Holman*, 289 S.W.3d 234, 237 (Mo. App. W.D. 2009) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "This Court applies *de novo* review to questions of law decided in

6

court-tried cases." *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012). Here, because the material facts are uncontroverted, we are reviewing the trial court's declaration of the law and its application to the facts, requiring *de novo* review.

## Analysis

The Department raises two points on appeal. It argues in its first point that the trial court erred in finding that Elliott's time in custody after his federal sentencing was related to his Missouri offenses, entitling him to jail-time credit. It argues in its second point that the trial court erred in finding that Elliott was entitled to jail-time credit for any time after Elliott was sentenced on the Missouri charges. We address the points collectively.

Section 558.031.1[5] governs whether Elliott receives jail-time credit. The statute provides, in pertinent part:

> A sentence of imprisonment shall commence when a person convicted of a crime in this state is received into the custody of the department of corrections or other place of confinement where the offender is sentenced. Such person shall receive credit toward the service of a sentence of imprisonment for all time in prison, jail or custody after the offense occurred and before the commencement of the sentence, when the time in custody *was related to* that offense . . . .

(Emphasis added).[6]

"The purpose of section 558.031 undoubtedly is to eliminate the disparity of treatment between indigent defendants, who typically are in custody prior to sentencing, and non-indigents who typically are free on bond prior to sentencing." *Goings v.*

---

[5] All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.
[6] Section 558.031.1 includes three exceptions to receiving jail-time credit that are not relevant to Elliott's request.

*Missouri Dept. of Corr.*, 6 S.W.3d 906, 908 (Mo. banc 1999). "The statute's use of the very broad term 'related to' instead of, for example, 'caused by' or 'the result of' compels the conclusion that his custody can be 'related to' both offenses and the statutory credit will nevertheless apply." *Id.* "Cases subsequent to *Goings* suggest that incarceration is related to the subsequent offense where the person is eligible for release on bail on the prior offense, but the subsequent charge prevents the person's release from custody." *Mikel v. McGuire*, 264 S.W.3d 689, 692 (Mo. App. W.D. 2008). "[T]he person has to prove that the subsequent offense would have prevented his release from custody on the prior offense." *Id.*

"It is not the relationship of the specific facts underlying two convictions . . . that is determinative of jail-time credit for purposes of section 558.031." *State ex rel. Nixon v. Kelly*, 58 S.W.3d 513, 518 (Mo. banc 2001). "Under section 558.031, it is to 'the time in custody' that the second conviction must be related." *Id.* at 519. "Time in custody is generally 'related to' a sentence, and thus eligible for credit within the subsection, if the inmate could have been free from custody absent the charge." *Pettis*, 275 S.W.3d at 317. "Time in custody is not 'related to' an offense if the prisoner would have been in custody regardless of the offense." *Farish v. Missouri Dept. of Corr.*, 416 S.W.3d 793, 797 (Mo. banc 2013).

We apply these legal standards directing the determination of whether jail-time is "related to" an offense by dividing the jail-time credit sought by Elliott into three periods: (1) the time Elliott spent in Missouri jails through the date of his federal sentencing (May 18, 1997, through May 19, 1997; and June 13, 1997, through November 21, 1997);

8

(2) the time Elliott spent in Missouri jails after he received, and while he was serving, his federal sentence (November 22, 1997, through December 30, 1997; and June 9, 1998, through March 24, 1999); and (3) the time Elliott spent in Missouri jails after completing his federal sentence (August 29, 2000, through August 31, 2000).

## I. Time in Missouri Jails before Federal Sentence

The Judgment ordered the Department to give Elliott jail-time credit for the 165 days he spent in Missouri jails before he was sentenced in federal court on November 21, 1997. The trial court found that this time was "related to" Elliott's Missouri charges because the Federal and Missouri charges arose out of the same criminal conduct, and because "[w]ithout the Missouri offenses, [Elliott] never could be convicted and sentenced by the federal court for being a felon in possession, and hence never would have served *any* time in the St. Louis County Jail or the Ste. Genevieve County Jail."

The Department does not contest its obligation to award Elliott 165 days of jail-time credit, though it disagrees with the trial court's rationale.[7] We address this portion of the Judgment because the trial court's rationale for ordering 165 days of jail-time credit is legally erroneous. Thus, though we affirm the trial court's determination that Elliott is entitled to 165 days of jail-time credit, we do so on a basis other than that described in the Judgment.[8]

---

[7] The trial court rejected the Department's argument that Elliott's request for a declaration that he was entitled to these 165 days of jail-time credit was moot, noting the Department's rescission of other jail-time credit that had been earlier awarded Elliott, and, thus, the prospect that the credit awarded by the Department just prior to trial could be later withdrawn. The trial court also noted that the Department had not awarded 165 days of credit against all of Elliott's Missouri sentences, specifically the fifteen-year sentence for attempted robbery in the first degree, which had been served by the time of trial.

[8] "[T]his court will affirm the judgment if the result was correct on any rational basis." *Heslop v. Heslop*, 967 S.W.2d 249, 255 (Mo. App. W.D. 1998).

Elliott is entitled to jail-time credit as a matter of law from May 18, 1997, through May 19, 1997,[9] and from June 13, 1997, through November 21, 1997, because his custody in Missouri jails during these time periods was "related to" the Missouri charges as that phrase has been construed by Missouri precedent. After Elliott was arrested on the Federal charge, the federal court denied his release on bond from the Ste. Genevieve County Jail in part because there was an outstanding warrant for Elliott's arrest on the Missouri charges. Thus, the Missouri charges "prevented his release from custody on the [Federal charge]." *Mikel*, 264 S.W.3d at 692.

The trial court employed an erroneous standard to reach the conclusion that Elliott was entitled to 165 days of jail-time credit. It is not dispositive, or even particularly relevant, that the Missouri and Federal charges arose out of the same criminal incident. *Kelly*, 58 S.W.3d at 518 ("It is not the relationship of the specific facts underlying two convictions . . . that is determinative of jail-time credit for purposes of section 558.031."). All that matters is that while in jail following arrest on the Federal charge, bond was denied Elliott in part because of the Missouri charges. In short, Elliott would have been eligible to be free from custody but for the Missouri charges. *Mikel*, 264 S.W.3d at 692.

Moreover, the trial court's conclusion that but for the Missouri charges there would have been no Federal charge is erroneous as a matter of law. Elliott was charged and convicted in federal court with violation of 18 U.S.C. § 922(g), which makes it

[9] Elliott's incarceration in the St. Louis County Jail on May 18, 1997, and May 19, 1997, occurred prior to the Circuit Court for St. Louis County issuing an arrest warrant on the Missouri charges and to the indictment and arrest warrant on the Federal charge. Nevertheless, the Department has credited Elliott for this time, presumably because Elliott was arrested in connection with the crimes he committed on April 15, 1997, that led to the Missouri charges. In any event, the Department is now bound by its decision to give Elliott jail-time credit for these two days.

10

"unlawful for any person . . . who has been *convicted* in any court of a crime punishable by imprisonment for a term exceeding one year . . . to *possess* any firearm" (emphasis added). In order to have been charged with, and convicted of, this offense, Elliott had to have been a felon **before** the Federal charge was committed, and, thus, before he possessed a firearm on April 10, 1997. It was not essential to the Federal charge for Elliott to commit criminal conduct while in possession of a firearm. It was thus superfluous to the Federal charge that Elliott committed the Missouri charges while in possession of a firearm. Elliott could have been convicted of the Federal charge regardless whether he committed, was charged with, or convicted of, the Missouri charges.

Though the trial court employed a legally erroneous standard to do so, it nonetheless correctly concluded that Elliott is entitled to 165 days of jail-time credit against all of the sentences imposed on the Missouri charges. *Heslop v. Heslop*, 967 S.W.2d 249, 255 (Mo. App. W.D. 1998) ("[T]his court will affirm the judgment if the result was correct on any rational basis."). Elliott is entitled to 165 days of jail-time credit for May 18, 1997, through May 19, 1997, and for June 13, 1997 through November 21, 1997 against all of the sentences imposed on his Missouri charges.

## II. Time in Missouri Jails while Serving Federal Sentence

As was the case with the 165 days of jail-time credit awarded prior to Elliott's federal sentencing, the Judgment determined that Elliott's time in custody in Missouri jails after he was sentenced on the Federal charge was "related to" the Missouri charges because the charges arose out of the same criminal incident and because there would have

11

been no Federal conviction absent the Missouri charges. We have already explained why this rationale is legally erroneous.

Once Elliott received his federal sentence on November 21, 1997, Elliott was thereafter ineligible to be released from custody because of the federal sentence. Thus, Elliott's time in custody in Missouri jails after sentencing on the Federal charge was not related to the Missouri charges for purposes of receiving jail-time credit because Elliott "would have been in custody regardless of the [Missouri] offense[s]." *Farish*, 416 S.W.3d at 797.

Elliott's situation is similar to prisoners in *Kelly* and *Dykes v. Missouri Dept. of Corr.*, 325 S.W.3d 556 (Mo. App. W.D. 2010) who were denied jail-time credit under section 558.031.1. In *Kelly*, the prisoner was charged with two counts of sexual assault for conduct during two separate time periods and convicted of both counts during the same trial. The trial court sentenced the prisoner to seven years on one count ("Conviction I") and ordered a new trial on the other count. The prisoner began serving his sentence on Conviction I in October 1995. In May 1996, the trial court convicted the prisoner of the second count after a new trial and sentenced him to another seven-year term ("Conviction II"), which the trial court ordered to run concurrent with Conviction I. The prisoner sought jail-time credit on Conviction II for the time he spent incarcerated from October 1995 to May 1996, arguing this time was related to Conviction II. The Supreme Court held that the prisoner was not entitled to jail-time credit for his incarceration from October 1995 to May 1996 because that time in prison related solely to Conviction I. "[E]ven absent [the prisoner's] arrest, trial or conviction on Conviction

II, he would have been in prison on Conviction I.  Absent Conviction I, there is nothing in the record to indicate that he would not have been out on bail on the charge that resulted in Conviction II until he was convicted of it [in May 1996]." *Kelly*, 58 S.W.3d at 519.

In *Dykes*, the prisoner committed a stealing offense in St. Louis County and a forgery offense in Scott County during the same week in 2004.  In September 2004, Scott County authorities arrested the prisoner on the forgery offense.  The prisoner pled guilty to the Scott County offense in May 2005 and was sentenced to eighteen months in prison. He was paroled on the Scott County offense in August 2005 and transferred to St. Louis County to await disposition of the stealing offense, of which he was later convicted and sentenced to fifteen years imprisonment.  The prisoner sought jail-time credit against the St. Louis County sentence for the time period following his conviction on the Scott County offense until his transfer to St. Louis County authorities, from May 2005 to August 2005.  We held, as a matter of law, that the prisoner was not entitled to jail-time credit for this period.  We concluded, in pertinent part:

> [O]nce [the prisoner] had been convicted and sentenced on the Scott County charges, he was not eligible for bail on that offense, and therefore would have remained incarcerated irrespective of the status or disposition of the St. Louis stealing charges. As a matter of law, then, his post-May . . . 2005 custody could not be "related to" the stealing charges, and he was not entitled to credit toward the sentence on his stealing conviction while he was imprisoned for forgery.

*Dykes*, 325 S.W.3d at 562.

Elliott is not entitled to jail-time credit for the time period he spent in Missouri jails following receipt of, and while serving, his federal sentence because that time was

not related to his Missouri charges as a matter of law.  That portion of the Judgment which awards Elliott jail-time credit for time spent in custody in Missouri jails from November 22, 1997, to December 30, 1997, and from June 9, 1998, to March 24, 1999, is reversed.[10]

### III. Time in Missouri Jails after Completion of Federal Sentence

Finally, we must determine whether Elliott should receive jail-time credit for time spent in Missouri jails after completing his federal sentence.  Elliott completed his federal sentence on August 29, 2000, and was transported on that day to the St. Louis County Jail, where he remained until the Department took custody of him on August 31, 2000.  The Judgment concluded that Elliott should receive jail-time credit for these days because Elliott's Missouri sentence did not commence until "sometime in 2000" when he was received into custody by the Department.  This conclusion was not supported by any evidence and was error as a matter of law.

Each Department face sheet[11] submitted to the trial court unambiguously shows that the Department commenced Elliott's Missouri sentences on February 26, 1999--the day he was sentenced--and calculated his maximum release date from that commencement date.  Elliott testified, in fact, that his Missouri sentences commenced on

---

[10] For reasons we explain in Section III, *infra*, the portion of time Elliott spent in Missouri jails after he was sentenced on the Missouri charges (that is, from February 26, 1999 through March 24, 1999) would also have been ineligible for jail-time credit because Elliott's Missouri sentences commenced on February 26, 1999.  It is axiomatic that Elliott is not eligible for jail-time credit against his Missouri sentences for time already being credited to service of those sentences.

[11] A face sheet is a document generated by the Department that shows the offenses for which a prisoner has been convicted, when the Department received the prisoner, what jail-time credit a prisoner has received, and a maximum release date.  The Department calculates a maximum release date for each conviction by starting with the date a prisoner is received, subtracting any jail-time credit the prisoner is entitled to, and then adding the imprisonment term the prisoner received at sentencing.

14

February 26, 1999. Though Elliott could not be committed to the custody of the Department until his federal sentence was complete, his Missouri sentences were ordered to run concurrent with each other *and with his federal sentence*. Plainly, the sentencing court imposed sentence on the Missouri charges intending that the sentences commence immediately.

Our conclusion is consistent with section 558.031.1, the first sentence of which provides that "[a] sentence of imprisonment shall commence when a person convicted of a crime in this state is received into the custody of the department of corrections *or other place of confinement where the offender is sentenced*." (Emphasis added.) This language plainly contemplates that a sentence of imprisonment with the Department may commence where the defendant cannot be taken into immediate custody by the Department because the person is already subject to confinement elsewhere. This most certainly is the case where the Missouri sentence is ordered to run concurrent with "confinement" elsewhere. Were we to construe otherwise, defendants whose sentences are ordered to be served concurrent with sentences already being served in another jurisdiction could never receive the benefit of concurrent service.

In Elliott's case, the sentences on his Missouri charges commenced on the date they were imposed--February 26, 1999. As a matter of law, Elliott is not eligible for jail-time credit after this date as he was already being credited with regular service of his Missouri sentences.[12]

---

[12] As we note in footnote number 10, *supra*, this same rationale also applies to the erroneous award of jail-time credit from February 26, 1999 to March 24, 1999. Were we to accept Elliott's contrary argument, then the Department would be required to recalculate the commencement date for each of Elliott's Missouri sentences,

15

That portion of the Judgment which awards Elliott jail-time credit for time spent in custody in Missouri jails from August 29, 2000, to August 31, 2000, is reversed.

## Conclusion

The Department's first and second points on appeal are granted. The portion of the Judgment awarding Elliott jail-time credit for time spent in Missouri jails from November 22, 1997, to December 30, 1997; from June 9, 1998, to March 24, 1999; and from August 29, 2000, to August 31, 2000; is reversed. However, the portion of the Judgment awarding Elliott jail-time credit for time spent in Missouri jails from May 18, 1997, to May 19, 1997, and from June 13, 1997, to November 21, 1997, against all of Elliott's sentences on the Missouri charges is affirmed, though on grounds other than those expressed in the Judgment.


_____
Cynthia L. Martin, Judge


All concur

---

denying Elliott the benefit of concurrent service of his Missouri sentences with his federal sentence. We cannot fathom why Elliott believes this would be to his advantage.

16