**Russell R. MAGGARD, Appellant,**

v.

**Donald WYRICK, Appellee.**

No. 85–2119.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1986.

Decided Sept. 2, 1986.

Ray Conrad, Federal Public Defender, Kansas City, Mo., for appellant.

John Oldenburg, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before LAY, Chief Judge, HEANEY and JOHN R. GIBSON, Circuit Judges.

1. The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of

LAY, Chief Judge.

In 1969, Russell Maggard was sentenced to life imprisonment in a Missouri state court upon his plea of guilty for the first degree murder of a deputy sheriff during the course of an armed robbery. In June, 1983, the Missouri Board of Probation and Parole (the Board) refused to release Maggard on parole at that time citing as its reason that it "would depreciate the seriousness of the offense committed or promote disrespect for the law."

After exhausting his state remedies, Maggard filed this petition for a writ of habeas corpus in United States District Court for the Western District of Missouri.[1] Maggard challenges the Board's refusal to grant him parole contending that the statute giving the Board its authority was not effective until 1982, see Mo.Ann.Stat. § 217.690 (Vernon 1983), and therefore the Board's reliance on that statute in rendering its decision violated the ex post facto clause of the United States Constitution. U.S. Const. art. I, § 10, cl. 1. Maggard further contends that the Board's refusal to permit him to examine his parole file violated his right to due process of law. The district court denied issuance of the writ holding that the Board's reason for denying parole would have satisfied the requirements for denial under the previous statute, Mo.Ann.Stat. § 549.261 (repealed 1982), as well as the present one and Maggard was not prejudiced by the application of the newer statute. Thus, the district court reasoned there was no ex post facto violation. The court further held that Maggard had no liberty interest in parole release under either statute and, therefore, there was no due process violation. This appeal followed.

Denial of Parole Release

An ex post facto law is one "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Cummings v. Mis-

Missouri.

*souri*, 71 U.S. (4 Wall) 277, 325–26, 18 L.Ed. 356 (1867); *see also Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 963–64, 67 L.Ed.2d 17 (1981). The purpose of the prohibition against ex post facto legislation is to give individuals fair warning of the effect of legislative acts, *Weaver*, 450 U.S. at 28, 101 S.Ct. at 963–64, and to restrain the government from passing arbitrary and vindictive legislation, *id.* at 29, 101 S.Ct. at 964; *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). Accordingly, the Supreme Court has cited two crucial elements necessary to establish an ex post facto violation: (1) the law must be retrospective, that is, it must apply to events occurring before its enactment; and (2) the law must disadvantage the offender making the ex post facto challenge. *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964.

At the time Maggard committed his offense, Mo.Ann.Stat. § 549.261 stated: "When in its opinion there is reasonable probability that the prisoner can be released without detriment to the community or to himself, the board *shall* release on parole any person confined in any correctional institution administered by state authorities." (Emphasis added). In 1982, the Missouri legislature renumbered and amended the statute to read: "When in its opinion there is reasonable probability that an inmate of a state correctional institution can be released without detriment to the community or to himself, the board *may in its discretion* release or parole such person." Mo.Ann.Stat. § 217.690(1) (emphasis added).[2] Maggard argues that under the former statute, parole release was mandatory once the Board found that the statutory criteria had been satisfied.[3] Under the statute as amended, however, given the same findings, parole release is purely discretionary with the Board. This, Maggard

contends, operates as a retrospective increase in his punishment and is therefore an ex post facto law.

In *Burnside v. White*, 760 F.2d 217 (8th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985), a habeas corpus petitioner was sentenced in 1974 to serve a 60–year sentence in a Missouri state prison. He was denied parole by the Board in 1983 pursuant to the new parole statute, section 217.690. The inmate claimed that section 217.690 as applied to him was an ex post facto law. We applied the two-factor test set forth in *Weaver* and held that although the Board applied the statute retrospectively, there was no ex post facto violation because the inmate's parole release would have been denied under the former statute as well. *Id.* at 223. The Board cited the seriousness of the offense as its reason for denying the inmate's parole, and we observed that the release of an offender convicted of a serious crime may be a detriment to the community. *Id.* at 222.

The same reasoning applies in the present case. There is no dispute that the application of section 217.690 to Maggard's parole release determination was a retrospective application of the statute. However, the Board stated that the reason for its denial of parole was the serious nature of the crime, the killing of a law enforcement official. It is well-established that the Board may determine that the serious nature of the inmate's offense requires that a longer term be served before parole release. *See Parker v. Corruthers*, 750 F.2d 653, 662 (8th Cir.1984). This rule is equally compelling under either the old or new Missouri parole release statutes. Thus, the Board's application of its findings to the new statute cannot be said to have

---

**2.** This change was presumably made in response to this court's ruling in *Williams v. Missouri Bd. of Probation & Parole*, 661 F.2d 697 (8th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982) (discussed *infra*), in which we held that the mandatory language of the former statute created in Missouri prisoners a liberty interest in parole release protected by due process considerations. *See Gale v. Moore*, 763 F.2d 341, 343 (8th Cir.

1985) (per curiam); *see also Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

**3.** In *Williams*, we observed that the language of § 549.261 "created a justifiable expectation that if the statutory criteria are satisfied, the inmate will be released on parole." 661 F.2d at 699.

operated to Maggard's disadvantage.[4] We therefore affirm the denial of the writ of habeas corpus by the district court.

Review of Maggard's Parole File

 Maggard also argues that the Board's refusal to permit him to review his parole file violated his right to due process of law under the Fourteenth Amendment. He relies on this court's decision in *Williams v. Missouri Board of Probation and Parole*, 661 F.2d 697 (8th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982), in which we held that section 549.261 created in Missouri prisoners a protected liberty interest in parole release. *Id.* at 698. That liberty interest entitled Missouri prison inmates to the right to certain procedural safeguards including the opportunity to review their parole files. *Williams*, 661 F.2d at 700.

In so holding, we relied on the United States Supreme Court's decision in *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). That case involved a parole release statute, similar to Missouri's, which stated that the board "shall" order the parole release of an inmate "unless" the board is of the opinion that the release should be deferred for any of four reasons. *See id.* at 11, 99 S.Ct. at 2105–06. The Court held that the statute provided the inmates with an expectancy of release which was entitled to some measure of constitutional protection. *Id.* at 12, 99 S.Ct. at 2106. The Court added, however, "we emphasize that this statute has unique structure and language and thus whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis." *Id.*

Following these guidelines, we held in *Williams* that "the Missouri law [section 549.261] providing that *when* the statutory and regulatory guidelines are met the inmate *shall* be released on parole gives rise

to the same protectible entitlement as the Nebraska scheme providing that the prisoner *shall* be paroled *unless* certain findings are made." *Williams*, 661 F.2d at 699. We went on to conclude that this entitlement to due process required that an inmate be advised of adverse information in his parole file that may lead to an unfavorable decision and that he be given an opportunity to address it. *Id.* at 700. It was following our *Williams* decision that the Missouri legislature amended the parole release statute replacing the mandatory "shall" with the discretionary "may in its discretion." *See supra* p. 197. We have since concluded that the Missouri statute as amended does not create a protected liberty interest in parole. *See Gale v. Moore*, 763 F.2d 341, 343 (8th Cir.1985) (per curiam); *Green v. Black*, 755 F.2d 687, 688 (8th Cir.1985).

Our analysis, however, does not end there. Maggard's due process right to review his parole file is not contingent solely upon the statute. A protected liberty interest may also arise when "particularized standards or criteria guide the state's decisionmakers." *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) quoting *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 467, 101 S.Ct. 2460, 2465–66, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring); *see also Parker v. Corruthers*, 750 F.2d 653, 660 (8th Cir.1984). These particularized standards or criteria may be found in any of several forms, including the state's administrative code and "regulations, practices or customs" which "have been formally utilized through such devices as handbooks or inter-office memoranda or other standardized customs which limit the Board's discretion." *Gale*, 763 F.2d at 343; *see also Green*, 755 F.2d at 688.

In the present case, this court has not been advised of any such regulations, practices or customs although the Missouri leg-

---

**4.** The amended statute (§ 217.690) does not prescribe a longer period of incarceration and on this basis is not ex post facto on its face. *Cf. Yamamoto v. United States Parole Commission*, 794 F.2d 1295, 1297–98 n. 7 (8th Cir.1986) (Lay, C.J., dissenting) (ex post facto inquiry must also

consider the overall effect of a change in legislation, not merely the effect of a change on a particular case citing *Lindsey v. Washington*, 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937)).

islature has mandated that "[t]he board shall adopt rules not inconsistent with law, in accordance with section 217.040, with respect to the eligibility of inmates for parole, the conduct of parole hearings or conditions to be imposed on parolees." [5] Mo.Ann.Stat. § 217.690(4) (Vernon 1983). Furthermore, the legislature has determined "that the board or court may at their discretion permit the inspection of the report or parts thereof by the defendant or prisoner or his attorney, or other person having a proper interest therein, whenever the best interest or welfare of a defendant or prisoner makes the action desirable or helpful." Mo.Ann.Stat. § 217.715 (Vernon 1983).

Ordinarily under the circumstances, we would remand to the district court with instructions that the court invoke section 217.715, which seemingly provides some minimal procedural due process by giving the Board or court the discretion to give an inmate permission to inspect his parole file. Upon inspection of the file the court should determine if there exists any adverse information in the file which in the best interest or welfare of the prisoner makes disclosure desirable.[6] Mo.Ann.Stat. § 217.715. The court should also determine from the rules of the board, as well as from any other administrative policy pronouncements, whether there exists particularized standards or criteria which implicate some procedural due process requiring that adverse information be disclosed. In this case, however, in view of the reasons given for denial of parole, it is obvious that the Board was relying on an undisputed factual premise that the crime was serious and to

grant release at this time would depreciate the seriousness of the crime. Under these circumstances, there is no factual dispute on which the file could provide further information germane to the reason given by the board. Therefore, it would be a futile gesture to permit inspection of the file.

The judgment of the district court is affirmed.

**5.** Mo.Ann.Stat. § 217.040 (Vernon 1983) is the Missouri legislature's general delegation of authority to the Missouri Department of Corrections to adopt administrative rules and regulations.

**6.** It would appear at least in future cases that the Board, and if they fail to make explicit their exercise of discretion under § 217.715, then the court, should examine the parole file and determine whether adverse information exists which could be conclusory or false, and then exercise discretion as to whether the inmate or his attorney should be allowed to inspect the file. It seems clear this establishes a minimum process

wherein the Board or the court, in order to exercise discretion, must in fact inspect the file before making such a discretionary decision. In order to exercise discretion a party must make a reasoned judgment based upon existing circumstances; an arbitrary refusal to make a decision is not the exercise of discretion. *Cf. Woosley v. United States,* 478 F.2d 139 (8th Cir. 1973) (distinguishes between a district court's failure to utilize its discretion and an abuse of its discretion in the context of sentencing). It is clear that discretion cannot be properly exercised if the Board or the court fail to investigate the file for that purpose.