Tommie GETTINGS, Appellant,

v.

**MISSOURI DEPARTMENT OF COR-
RECTIONS, and its Board of Pro-
bation and Parole, Respondents.**

No. WD 53864.

Missouri Court of Appeals,
Western District.

Aug. 5, 1997.

Richard L. Beaver, Jefferson City, for ap-
pellant.

Jeremiah W. (Jay) Nixon, Attorney Gener-
al, Cassandra K. Dolgin, Assistant Attorney
General, Jefferson City, for respondents.

Before SMART, P.J., and LOWENSTEIN
and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Mr. Gettings filed a Petition for Certiorari
in the circuit court requesting it to grant
review of the August 1996 decision of the
Board of Probation and Parole denying him
parole and setting his next parole hearing for
August 1998. The court dismissed his Peti-
tion. Mr. Gettings appeals, alleging that he

had a constitutional right to parole, that the Board violated its own guidelines by denying him parole, and that the circuit court should have ordered the Board to grant him parole. Assuming without deciding that the issues are properly raised by Mr. Gettings' Petition, we find that his contentions are without merit and affirm dismissal of his Petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Gettings was convicted of voluntary manslaughter and armed criminal action. On February 25, 1991, he received concurrent fifteen and five year sentences, respectively, for these crimes. The parole regulations in effect at the relevant time set forth guidelines for parole release consideration. Among those guidelines is a table which sets forth how many months a prisoner will customarily serve on sentences of various lengths. The amount of time shown varies considerably based on the prisoner's "Salient Factor Score."

Salient factor scores can range from a low of 0 to a high of 11. The matters considered in determining a salient factor score are clearly intended to assist the Board in forecasting success while on parole, for they include issues such as whether the prisoner has prior convictions or incarcerations, how recently any other crimes were committed, history of alcohol or drug abuse, prior revocation of parole or probation, and similar matters.

Mr. Gettings first came up for parole consideration in 1994. Parole was denied, and a second hearing was scheduled for August of 1996. At that time Mr. Gettings received a salient factor score of 11, the highest score possible. The table indicates that a prisoner with a score of 9 to 11 is in the excellent

category and that the anticipated time to be served under the guidelines for such a prisoner, who has received a 15 year sentence, would be 60 to 72 months, that is, 5 to 6 years.

The Board denied parole to Mr. Gettings, stating:

> Because you have been convicted of Voluntary Manslaughter and Armed Criminal Action after you shot and killed the victim following an altercation, the Board believes that your release at this time would depreciate the seriousness of the offense committed and/or promote disrespect for the law. Therefore, the Board in its discretion has determined to go outside the guidelines and schedule you for another personal hearing in August, 1998.

Mr. Gettings' appeal to the full Board was denied. He then filed this Petition for Certiorari[1] alleging that he had a liberty and due process interest in parole after 60 months, and a regulatory right to such parole in light of his salient factor score of 11.

## II. MR. GETTINGS HAS NO LIBERTY OR DUE PROCESS INTEREST IN RELEASE ON PAROLE ONCE HE HAS SERVED THE TIME SET OUT IN THE SALIENT FACTORS TABLE

▪ First, we note that "there is no constitutional or inherent right of a convicted person to be conditionally released before expiration of a valid sentence." *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675 (1979). This is because the conviction has extinguished any liberty interest in release until the sentence has been served. *Id.; McKown v. Mitchell*, 869 S.W.2d 765, 768 (Mo.App.1993).

---

1. Mr. Gettings alleges that a Petition for Certiorari is the proper method to raise this issue because certiorari is appropriate where an administrative decision is not otherwise subject to judicial review, and the decision of the Board denying him parole is in fact not otherwise subject to review. The State argues that certiorari is not an available method for Mr. Gettings to use to obtain relief, because the Board's decision is subject to judicial review under Section 217.670.3. We need not resolve the issue of whether Mr. Gettings Petition for Certiorari was

the proper method by which to bring this case before us for, as set forth *infra*, we find that Mr. Gettings contentions are without merit. We also note that, regardless of whether and how review can be had of a parole decision, numerous prior cases have recognized that a declaratory judgment action can be brought to determine a prisoner's entitlement to release under the relevant parole statutes and regulations. *See, e.g., McDermott v. Carnahan*, 934 S.W.2d 285 (Mo. banc 1996); *Elliott v. Carnahan*, 916 S.W.2d 239 (Mo. App.1995).

State statutes and regulations governing parole can create a constitutionally protected liberty interest in parole, however, if they specifically mandate that parole must be granted when certain criteria are met. *Maggard v. Wyrick*, 800 F.2d 195, 198 (8th Cir.1986), *cert. denied*, 479 U.S. 1068, 107 S.Ct. 958, 93 L.Ed.2d 1006 (1987); *McKown*, 869 S.W.2d at 767–69; *Watley v. Missouri Bd. Of Probation and Parole*, 863 S.W.2d 337, 339 (Mo.App.1992). Yet, even in such cases, a liberty interest is not implicated unless and until statutory and regulatory criteria for release have been satisfied. *Id.*

Where the relevant statutes and regulations do not create mandatory criteria for parole but instead leave the question of parole to the discretion of the parole board, then the prisoner has no liberty or due process right to parole just because non-mandatory guidelines have been met. *McKown*, 869 S.W.2d at 769 (fact that guidelines set service of 25% of sentence as factor in deciding when parole would be granted did not create liberty interest in parole once 25% of sentence had been served).

Applying these principles here, we note that the governing statute is Section 217.690. It states in relevant part that:

When **in its opinion** there is reasonable probability that an offender of a correctional facility can be released without detriment to the community or to himself, the board may in **its discretion** release or parole such person except as otherwise prohibited by law. All paroles shall issue upon order of the board, duly adopted. § 217.690.1 (emphasis added).

In interpreting this statute, *Fults v. Missouri Bd. of Probation and Parole*, 857 S.W.2d 388 (Mo.App.1993), specifically found that the statute does place the parole decision in the wide discretion of the Board. As *Fults* noted, the regulations adopted pursuant to this statute similarly indicate in multiple places that they are simply intended to provide guidelines as to the customary range of time to be served, but that they do not remove the Board's discretion to consider individual factors in each case and thus create no constitutional right to application of a particular parole date. 857 S.W.2d at 391–

92. *Accord Cooper v. Missouri Bd. of Probation and Parole*, 866 S.W.2d 135 (Mo. banc 1993); *Watley*, 863 S.W.2d at 340.

The rationale set out in the above cases is applicable here. Even a cursory review of the parole guidelines relied on by Mr. Gettings reveals that they do not mandate release of a prisoner in 60 months just because the prisoner has a perfect salient factor score and has been sentenced to a 15-year term. The guidelines place such release fully within the discretion of the Board.

The document relied on by Mr. Gettings as the source of the parole guidelines on which he relies is entitled "Rules and Regulations Governing the Granting of Paroles, Conditional Releases and Related Procedures." The section entitled "Parole Policy Guidelines" states in relevant part:

A.  To establish a uniform parole policy, promote consistent exercise of discretion and equitable decision-making, *without removing individual case consideration,* the Board has adopted guidelines for parole release consideration.

B.  These guidelines indicate the *customary range of time* to be served before release for various combinations of *offense seriousness, offender characteristics and sentence length.* The time ranges specified by the guidelines are established specifically for cases with good institutional adjustment and program progress. *Mitigating or aggravating circumstances may warrant decisions outside the guidelines. If a decision above the guidelines is reached,* the reasons shall be stated in the notice to the inmate.

C.  An evaluation sheet containing a salient factor score *serves as an aid* in determining release.

D.  The Board shall review the guidelines, including the salient factor score, periodically and may revise or modify them at any time as deemed appropriate.

E. If an offense can be classified under more than one class, or multiple separate offenses are involved, the most serious applicable class shall be used. Multiple separate offenses may be considered an aggravating factor in decisions reached above the guidelines.

F. The Board reserves the right to *consider total offense behavior* as an aggravating factor in decisions reached above the guidelines.

(emphasis added).

Thus, the guidelines themselves say that they simply set out the *customary* range of time to be served before release. They make it clear that a decision above the guidelines may be reached, for Paragraph B states, "If a decision above the guidelines is reached, the reasons shall be stated in the notice to the inmate." That same paragraph also indicates that both offense seriousness and sentence length are matters which will be considered.

Moreover, Paragraph C specifically states, "An evaluation sheet containing a salient factor score serves as *an aid* in determining release." If the salient factor score is just an aid in determining release, then it cannot mandate release, as argued by Mr. Gettings. The non-mandatory nature of the score is also highlighted by the fact that the Board reserves the right to review and change the guidelines, and the salient factor score, at any time. Finally, Paragraph F makes it clear that "[t]he Board reserves the right to consider total offense behavior as an aggravating factor in decisions reached above the guidelines."

In light of these many qualifications on the relevance and weight to be given to the salient factor score, it is not surprising that other courts have rejected arguments similar to that now made by Mr. Gettings. Thus, in *Watley,* this Court held, "Nowhere in the statutes, the regulations or the guidelines is there an absolute *required* release date for these offenses. On the contrary, all of these sources support the Board's discretionary authority to grant or deny parole." 863 S.W.2d at 340. We thus held that the Board did not abuse its discretion in denying release to a

prisoner based on the seriousness of the offense, despite the fact that the prisoner's salient factor score placed him within the guidelines for release on parole.

Similarly, in *Wheat v. Missouri Bd. of Probation and Parole,* 932 S.W.2d 835, 839 (Mo.App.1996), we rejected appellant's argument that he had a liberty interest in parole once he completed the MOSOP program based on the fact that the regulations indicate that a prisoner will customarily be sent to the program within a certain time period before release, stating:

Even if [Mr. Wheat] is correct in his belief that prisoners are *typically* released in the year or so after completing the program, that would not entitle any particular program graduate to release at a specific time. The standards for release are those set out in the statute, and even then release is firmly committed to the Board's discretion. If we were to require all inmates to be released after completing this program, we would undercut the Board's discretion....

*Wheat,* 932 S.W.2d at 839 (emphasis in original).

■ We reach the same result here. The guidelines, including the salient factor score relied on by Mr. Gettings, simply serve as aids for consideration by the Board in making its parole determination. As Paragraphs A–F of the guidelines make clear, the guidelines do not remove the Board's right to act outside the guidelines in an individual case. The Board determined that the facts of this individual case justified it in going outside the guidelines. We cannot say that this determination was outside the Board's authority or an abuse of discretion.

■ Mr. Gettings alternatively argues that the reason the Board gave for denying parole—the seriousness of his offense—subjected him to double jeopardy. In support, he notes that the salient factors table already requires service of a longer time period (60–72 months) because he is serving a 15 year sentence for a Class A felony, and that the length of that sentence reflects the seriousness of his crime. He says it is therefore unfair for the Board to again use the seriousness of his crime as a reason to keep him in

prison beyond the 60 to 72 month period listed in the table.

Mr. Gettings is incorrect. First and foremost, double jeopardy cannot be implicated by the denial of parole here, for Mr. Gettings has still received only a single conviction and sentence for each crime. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *State v. Davis*, 849 S.W.2d 34 (Mo.App.1993). Mr. Gettings makes no claim that he is being forced to serve a second sentence in addition to that imposed by the court for his crimes, or that he has been subjected to a second conviction. Rather, he simply claims a right to serve less than the sentence imposed by the trial court. As noted above, however, a prisoner has no right to serve less than the sentence imposed by the court unless such a right is given by statute or regulation, *see Greenholtz*, 442 U.S. at 7, 99 S.Ct at 2104, 60 L.Ed.2d at 675, and for the reasons noted above, no such right is given by the guidelines. Thus, his argument is without merit.

Once Mr. Gettings' double jeopardy argument is rejected, it is evident that it was fully appropriate for the Board to consider the seriousness of the offense in denying parole. As the Eighth Circuit noted in *Maggard*, "It is well-established that the Board may determine that the serious nature of the inmate's offense requires that a longer time be served before parole release." 800 F.2d at 197. Indeed, the seriousness of the crime has always been a key factor for consideration by the Board in determining whether a prisoner will be released for parole. § 217.690; 14 C.S.R. 90–2.010(9)(A)(1) (1992); *McKown*, 869 S.W.2d at 769 n. 9; *Watley*, 863 S.W.2d at 340. In fact, in *Watley*, as here, the Board denied release by the time set out in the salient factors table because it found release at that time would depreciate the seriousness of the offense. We affirmed the Board's discretion to make this determination.

Any other result would make no sense. If Mr. Gettings' argument were accepted, it would in effect make the salient factor score a mandatory basis for release. The Parole Board would have no discretion but to release a prisoner who had served the time period set in the table, even if it felt that the facts of the particular crime made it inappropriate to release the prisoner. Such an interpretation of the statute is contrary to the many authorities noted above holding that the current statutes and regulations make release discretionary with the Board. It is also contrary to the express language of the Parole Policy Guidelines quoted above. Those guidelines specifically state in Paragraph B that the seriousness of the offense will be considered. They also state in Paragraph F that the Board may consider total offense behavior as an aggravating factor. Here, the Board did just that. It noted that Mr. Gettings had shot and killed a victim after an altercation, and that he had been convicted of both manslaughter and armed criminal action. It was not improper for the Board to consider these factors in making its decision.

For all of these reasons, the judgment dismissing Mr. Gettings' Petition is affirmed.

All concur.