

# In the
# Missouri Court of Appeals
# Western District

JOHN NEWTON,

                **Appellant,**

v.

MISSOURI DEPARTMENT OF
CORRECTIONS,

                **Respondent.**

**WD81343**

**OPINION FILED:**

**April 16, 2019**

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Daniel Richard Green, Judge**

**Before Division One:**
**Lisa White Hardwick, P.J., Edward R. Ardini, and Thomas N. Chapman, JJ.**

John Newton (Newton) appeals summary judgment by the Circuit Court of Cole County

(Trial Court), denying his petition for declaratory judgment and granting judgment in favor of

the Missouri Department of Corrections (DOC). In his declaratory judgment action Newton

claimed that the DOC miscalculated the beginning date of his 120-day period of confinement in

which to complete the Institutional Treatment Center (ITC program) provided for under §

559.115.3; that this miscalculation prevented him from successfully completing the ITC

program; and that he was therefore entitled to statutory discharge to probation or an order

directing the Sentencing Court to have a hearing to determine whether he should be granted

probation. Because there was no presently existing justiciable controversy which entitled Newton

to declaratory relief, we affirm.

## Factual and Procedural Background

On November 14, 2014, the Vernon County Circuit Court revoked Newton's probation: sentenced him to three years in the DOC; and, pursuant to § 559.115.3, ordered that he participate in a DOC 120-day ITC program.[1] Newton was delivered to the DOC on the Vernon County charge on December 2, 2014. Newton initiated a request for disposition of his pending

---

[1] Section 559.115.3 states:

> The court may recommend placement of an offender in a department of corrections one hundred twenty-day program under this subsection or order such placement under subsection 4 of section 559.036. Upon the recommendation or order of the court, the department of corrections shall assess each offender to determine the appropriate one hundred twenty-day program in which to place the offender, which may include placement in the shock incarceration program or institutional treatment program. When the court recommends and receives placement of an offender in a department of corrections one hundred twenty-day program, the offender shall be released on probation if the department of corrections determines that the offender has successfully completed the program except as follows. Upon successful completion of a program under this subsection, the board of probation and parole shall advise the sentencing court of an offender's probationary release date thirty days prior to release. The court shall follow the recommendation of the department unless the court determines that probation is not appropriate. If the court determines that probation is not appropriate, the court may order the execution of the offender's sentence only after conducting a hearing on the matter within ninety to one hundred twenty days from the date the offender was delivered to the department of corrections. If the department determines the offender has not successfully completed a one hundred twenty-day program under this subsection, the offender shall be removed from the program and the court shall be advised of the removal. The department shall report on the offender's participation in the program and may provide recommendations for terms and conditions of an offender's probation. The court shall then have the power to grant probation or order the execution of the offender's sentence.

In practice, the statute provides that, where certain qualifications for participation are met, a court may sentence a defendant to the DOC and, pursuant to section 559.115.3, order that the defendant participate in an ITC program administered or approved by the DOC. The DOC determines whether the defendant has successfully completed the program, and the program must be completed during the 120 days of confinement. *Id.* The DOC is required to provide a report to the sentencing court indicating whether the defendant is going to successfully complete the ITC program. *Id.* If the DOC reports that the defendant will successfully complete the program, the defendant would (barring intercession by the sentencing court) be entitled to release on probation on completion of his 120-day period. *Id.* This is colloquially referred to as a "statutory discharge." If the sentencing court takes no action after receiving a report of successful completion of the program, the defendant is released on probation. However, if the sentencing court conducts a hearing within 90 to 120 days from the date the defendant was delivered to the DOC, and determines that probation is inappropriate and denies probation, then the defendant will be required to continue serving his sentence in the DOC. *Id.*

2

Christian County offenses; was transferred by writ to the Christian County Sheriff's custody; and, as a result, did not complete the diagnostic process necessary to be placed in the ITC program ordered in the Vernon County case. Newton did not therefore complete the ITC program ordered in the Vernon County case.

On January 22, 2015, Newton appeared before the Circuit Court of Christian County (Sentencing Court) and pleaded guilty to felony stealing and was sentenced to seven years in the DOC; pleaded guilty to felony harassment of a person under age 17 by a person over age 21 and was sentenced to seven years in the DOC; and also pleaded guilty to one count of misdemeanor child molestation and one count of misdemeanor assault. All of the Christian County sentences were ordered to run concurrent to each other, and consecutive to the 3-year Vernon County sentence.[2] The Christian County Sentencing Court also ordered that Newton participate in an ITC program as provided for under § 559.115.3.

On February 4, 2015, Newton was returned to the DOC; and on March 1, 2015, began participating in the ITC program ordered in the Christian County case.

On March 19, 2015, even though Newton had not completed the ITC program, the Vernon County Circuit Court entered an order placing him on probation, subject to his release on

---

[2] On December 23, 2016, the Christian County Circuit Court amended its sentences, and ordered the Christian County sentences to be concurrent with (not consecutive to) the Vernon County sentences.

3

the Christian County charges.[3]

On April 15, 2015, the DOC issued a Court Report Investigation ("report") to the Christian County Sentencing Court, advising it of Newton's participation in the 120-day ITC program. In its report the DOC indicated that, because Newton had already been in its custody for the Vernon County charges, it had started the 120-day period on January 22, 2015 (the date he was sentenced in Christian County) and not on February 4, 2015 (the date Newton physically returned to the DOC). The report alerted the Sentencing Court that "Newton is expected to complete the [ITC] program on 5-26-15. His 120th day is 5-22-15. He will be unable to complete the program through no fault of his own and is therefore ineligible for a statutory discharge." The DOC report provided that Newton was "doing satisfactory [sic] in all areas of the [ITC] program"; but went on to recommend that probation be denied:

> This officer has serious concerns with Newton being released to community supervision. His prior performance on probation was poor. He incurred multiple violations and citations, including several laws violations, including the present offenses, the Child Molestation offenses, and Damage to Jail Property. He tested positive on five occasions for alcohol and two times amphetamines, and eventually absconded from supervision. He continued to be with the victim of his Domestic Violence offense, despite directives that he was to have no contact with her. Newton's victimization of a juvenile is particularly troubling, especially as he took no accountability for his actions and denied that he had ever engaged in sexually offending behavior. Should Newton return to the community, this officer fears for his victim's safety, as well as the safety of other potential victims.

---

[3] Newton's request for disposition of the charges in Christian County resulted in his absence from the DOC, and he was therefore unable to participate in the ITC program ordered in Vernon County. Newton did not therefore receive a statutory discharge to probation on the Vernon County Charge. In its Court Report Investigation (dated March 6, 2015) related to the Vernon County case, though not granting a statutory discharge, the DOC nevertheless issued a favorable report recommending probation on the charge from Vernon County. Though Newton introduced the order of the Vernon County court granting him probation in his motion for summary judgment in the instant action, he did not include the Court Report Investigation in his Vernon County case in the legal file. Newton included the Vernon County Court Report Investigation as Exhibit E in his Index of Exhibits (filed on June 29, 2015) in his action seeking a writ of mandamus in the Southern District of our Court, in *State ex rel. John Newton v. Hon. Laura Johnson*, 496 S.W.3d 516 (Mo. App. S.D. 2016). *See Vogt v. Emmons,* 158 S.W.3d 243, 247 (Mo. App. E.D 2005) ("A court may take judicial notice of its own records and may take judicial notice of the records of other cases when justice so requires.").

Therefore, it is this officer's respectful recommendation that Newton be denied probation.

On April 24, 2015, the Christian County Sentencing Court entered its order denying Newton's release on probation. On June 1, 2015 (48 days after the report was issued, and 38 days after the court denied probation), Newton responded with a motion requesting that the Christian County Sentencing Court reconsider its order denying probation, claiming that his inability to complete the program was due to the DOC's improperly calculating his delivery date (the beginning date of his 120-day period). On June 3, 2015, after hearing argument, the Sentencing Court overruled Newton's motion because he had failed to complete the ITC program by May 22, 2015 (and by implication adopted the DOC's position that delivery occurred on sentencing). Additionally, the Sentencing Court found that it was "without jurisdiction to hear the motion pursuant to Section 559.115, because the 120-day time period has run."

On June 29, 2015, Newton sought mandamus relief from the Missouri Court of Appeals to compel the Christian County Sentencing Court to award him probation. *State ex rel. John Newton v. Hon. Laura Johnson,* 496 S.W.3d 516 (Mo. App. S.D. 2016). Noting that it was undisputed that Newton had failed to complete the ITC program and that the decision to grant probation was, pursuant to § 559.115.3, within the Sentencing Court's discretion, the Southern District Court of Appeals denied issuance of a permanent writ. *Id*. at 522.

On October 3, 2016, Newton filed (in the instant action) a petition for declaratory judgment against the DOC in the Circuit Court of Cole County (Trial Court). Newton complained that, but for the DOC's alleged miscalculation of the beginning date of his 120-day period, he would have been released on probation. Newton petitioned the Trial Court to enter a judgment "declaring that [he] be granted statutory release on probation"; and in his prayer asked

5

the Trial Court to grant him "Declaratory Judgment with directions to the [Sentencing Court] to either grant him probation or, in the alternative, schedule a hearing within 30 days of this [Trial] Court's order becoming final, to determine whether probation is appropriate." [4]

Both Newton and the DOC filed motions for summary judgment. The Trial Court granted the DOC's motion for summary judgment, and found that Newton's claim was not properly the subject of a declaratory judgment action; was past the statute of limitations for an action against the DOC; and that the DOC did not miscalculate Newton's 120-day period. This appeal followed.

## Standard of Review

When considering appeals from summary judgment, our review is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am Marin Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* "The Court will review the record in the light most favorable to the party against whom judgment was entered...[and] accord the non-movant the benefit of all reasonable inferences from the record." *Id.* "On appeal from a judge-tried case, the appellate court is concerned with the correctness of the result, not with the route taken to reach that result." *Purcell v. Cape Girardeau County Comm'n*, 322 S.W.3d 522, n.4 524 (Mo. banc 2010) (quoting *Reinecke v. Kleinheider*, 804 S.W.2d 838, 841 (Mo. App. E.D. 1991)). The Court must affirm the

---

[4] As the Trial Court's order properly observed it "does not have supervisory authority over the [Sentencing] court. One circuit court has no supervisory authority over another circuit court to order the correction of errors." Quoting *State ex rel. Mertens v. Brown*, 198 S.W.3d 616, 619 (Mo. banc 2006).

circuit court's judgment if it is correct on any ground supported by the record, regardless of whether the circuit court relied on that ground. *Id.* (citations omitted).

**Analysis**

In order for a court to find in favor of a petition for declaratory judgment:

> "The court must be presented with: (1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake ... ; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law."

*Missouri Ass'n of Nurse Anesthetists, Inc. v. State Bd. of Registration for the Healing Arts*, 343 S.W.3d 348, 353-54 (Mo. banc 2011) (quoting *Missouri Soybean Ass'n v. Missouri Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. banc 2003)).

In the instant case, Newton contends that the DOC's determination of the beginning date of his 120-day period ordered by the Sentencing Court was incorrect and that this alleged miscalculation impaired his rights under § 559.115.[5] The DOC calculated the start date of his 120-day period on the date he was sentenced, January 22, 2015. Newton maintains that the DOC should have considered February 4, 2015 (the date he physically returned to the DOC) as the date he commenced his 120-day period, which would have provided him with an additional 13 days to complete the ITC program. Consequently, we consider whether Newton had a legally protected interest, if that interest was harmed by the DOC's action, and if so, whether that constitutes "a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief." *Missouri Soybean Ass'n,* 102 S.W.3d at 25.

---

[5] Newton raises three points on appeal, the first is that the trial court erred in finding that there was no justiciable controversy because the DOC "wrongly declared the sentencing court lost authority to release Appellant," the second is that his claim was not time-barred due to his diligent pursuit of his rights, and the third is that the DOC's calculation of his start date was error.

Though ostensibly separate claims of error, Newton's first and third points on appeal both implicitly rely on his assertion that the trial court erred in upholding the DOC's determination of the start date of his 120-day ITC program (Point III), and erred in finding that Newton's claim failed to present a justiciable controversy (Point I). As discussed below, we find that the DOC did miscalculate the beginning date of Newton's 120-day period, but that this did not present the Trial Court with a justiciable controversy entitling Newton to declaratory relief.

In pertinent part, § 559.115.3 provides that "the offender shall be released on probation if the department of corrections determines that the offender has successfully completed the program *except as follows…*" (emphasis added). The exception makes the offender's release on probation contingent upon the sentencing court refraining from executing his sentence. *Id*. Under § 559.115.3, if an offender successfully completes a program, the board of probation and parole must advise the sentencing court of the statutory discharge at least thirty days before release is scheduled to occur. *Id*. The sentencing court shall follow the recommendation of the department unless it determines "that probation is not appropriate." *Id*. If the sentencing court determines that probation is not appropriate it may order execution of the sentence but "only after conducting a hearing on the matter." *Id*. The hearing must be held within 90 to 120 days "from the date the offender was delivered to the department of corrections." *Id*. If the DOC has reported successful completion of the ITC program, and the hearing is not held within the 120-day period, the prisoner is entitled to statutory discharge, even if the sentencing court ordered the execution of his sentence. *Id*. *See also State ex rel. Kizer v. Mennemeyer*, 421 S.W.3d 558, 560 (Mo. App. E.D. 2014) (finding that a sentencing court's order executing a prisoner's sentence was beyond the court's discretion when the prisoner had successfully completed the program and the sentencing court failed to hold a hearing within 120 days as required by statute). Other than

8

requiring a hearing, the statute places no restrictions on the discretion of the sentencing court to release the offender or execute his sentence. § 559.115.3.

Successful completion of the ITC program is determined by the DOC. *Id.* If the DOC finds that an offender did not complete the ITC program, they are to remove the offender from the program, to advise the court of the withdrawal, and to issue a report on the offender's participation in the program. *Id.* The DOC may make recommendations about the terms and conditions of probation. *Id.* The sentencing court then has the discretion to award probation or execute the sentence. *Id.* If the sentencing court decides to award probation when the offender did not successfully complete a 120-day program, it must inform the State in writing prior to the grant of probation. § 559.115.6. The State has ten days to request a hearing in writing. *Id.* If the State does not request a hearing, the court may then grant probation. *Id.*

**I.  The date of physical delivery to the DOC (February 4, 2015) was the beginning date of Newton's 120-day period of confinement under § 559.115.3.**

Section 559.115.3 provides for a 120-day period in which a sentencing court retains authority to grant probation, or (where the DOC has determined the prisoner is eligible for statutory discharge) to hold a hearing to determine whether to require the defendant to continue serving out his sentence. In relevant part, § 559.115.3 provides that the period in which the sentencing court retains authority is calculated "from the date the offender was *delivered* to the department of corrections." (emphasis added). "Delivered" is not a defined term in the statute. When a term is not defined the application of "the plain and ordinary meaning of a statute's words" is the "north star" of statutory interpretation. *State v. Bouse,* 150 S.W.3d 326, 329 (Mo. App. W.D. 2004). Here, the DOC does not dispute that "delivery" means physical delivery. However, the DOC contends, without citation, that until an offender is released, they can only be

9

delivered to the DOC one time. Consequently, because Newton had already been delivered to the DOC pursuant to the Vernon County sentences, he was only on "outcount" when he was physically in the Christian County jail. According to the DOC, because Newton was still in their constructive custody, he was "delivered" to the DOC for the Christian County sentences on the date that he was sentenced. Under this interpretation, the 120-day term during which § 559.115.3 granted the Sentencing Court authority over Newton's probation began when he was sentenced on January 22, 2015, not when he physically was returned to their facility on February 4, 2015.

The DOC's interpretation of the statute is contrary to Missouri law and principles of statutory interpretation. In 2013 § 559.115.3 was amended. Before the 2013 amendment, the statute provided that the sentencing court was required (when determining whether to deny probation after the DOC had determined the defendant had successfully completed the ITC program) to conduct "a hearing on the matter within ninety to one hundred twenty days *of the offender's sentence.*" § 559.115.3, RSMo Cum. Supp. 2012 (emphasis added). The 2013 amendment now requires "a hearing on the matter within ninety to one hundred twenty days *from the date the offender was delivered* to the department of corrections." § 559.115.3, RSMo Cum. Supp. 2013 (emphasis added).

> The current version of the section 559.115.3, which became effective after Kizer completed his first 120 days, now provides that the trial court shall conduct a hearing on the matter within 90 to 120 days from the date the offender was delivered to the Department of Corrections, rather than within 90 to 120 days from the offender's sentence.

*Mennemeyer*, 421 S.W.3d at 560 n.3.

We do not ignore such specific and distinct changes in the law. "When the General Assembly alters a statute, we are obligated to deem the alteration as having an effect." *Bouse,* 150 S.W.3d at 334. By explicitly replacing "sentenced" with "delivered" the legislature chose to

10

use an event to calculate the 120-day term that ensured that an offender would be physically under the control of the DOC and able to participate in a program before the clock began to run on the term of authority of the sentencing court.

In the context of post-conviction proceedings, the Missouri Supreme Court held that the term "delivery" meant physical delivery:

> "within ninety days after the movant is delivered to the custody of the Department of Corrections. Failure to file a motion within the time provided by this Rule 24.035 shall constitute a complete waiver of any right to proceed under this Rule 24.035." The time limits established in Rule 24.035 are mandatory; failure to file a timely motion procedurally bars a movant from seeking relief under the rule.
>
> The court of appeals held and the State argues here that a person under probation is within the constructive custody of the Department of Corrections. This is because (a) the Board of Probation and Parole is a division of the Department of Corrections and (b) a person under probation is subject to court imposed conditions and the supervision of that board.
>
> Although a concept of constructive custody can be found in the case law in other contexts, the language of Rule 24.035 is plain and not couched in terms of constructive custody. We, therefore, hold that the time limitations imposed in Rule 24.035 begin to run when a person under sentence is delivered, physically, into the custody of the Department of Corrections.

*Thomas v. State*, 808 S.W.2d 364, 365 (Mo. banc 1991) (internal citation omitted)

Contrary to the DOC's assertion that there can only be one date for "delivery," Missouri courts have held that delivery to the DOC for a particular sentence is required to trigger the running of the time limits for that sentence, even when the offender was already in the DOC on another charge when he received the later sentence at issue. *Hopkins v. State*, 802 S.W.2d 956, 958 (Mo. App. W.D. 1991); *see also McGowan v. State*, 949 S.W.2d 657, 658 (Mo. App. S.D. 1997) (finding that the fact that an offender was currently residing in the DOC was immaterial in calculating the date he was in custody because that incarceration was on a different conviction and the statute required physical delivery to the DOC for the conviction being challenged).

In light of these precedents which had interpreted "delivery" to mean physical delivery, the legislature's amendment of § 559.115 in 2013 changing the event used to calculate the start date of the program period from "sentencing" to "delivery" is significant.

> In construing statutes to ascertain legislative intent it is presumed the legislature is aware of the interpretation of existing statutes placed upon them by the state appellate courts, and that in amending a statute or in enacting a new one on the same subject, it is ordinarily the intent of the legislature to effect some change in the existing law. If this were not so the legislature would be accomplishing nothing, and legislatures are not presumed to have intended a useless act.

*Kilbane v. Director of Department of Revenue,* 544 S.W.2d 9, 11 (Mo. banc 1976) (quoting *Gross v. Merchants-Produce Bank*, 390 S.W.2d 591, 597 (Mo. App. 1965)).

The use of the date of Newton's sentence to calculate the start of his 120-day term was incorrect. The 120-day period began on the date he returned to the DOC, February 4, 2015, and ended on June 4, 2015.

## II. The DOC's error in calculating the 120-day period does not present a justiciable controversy that serves as a basis for Newton's declaratory judgment action.

The DOC's miscalculation of the 120-day period did not entitle Newton to the declaratory relief he sought from the Trial Court. It has long been established "that a declaratory judgment action can be brought to determine a prisoner's entitlement to release under the relevant parole statutes and regulations." *Gettings v. Missouri Dep't of Corr.*, 950 S.W.2d 7, 8 n.1 (Mo. App. W.D. 1997). However, in this instance, any interest that might have been conferred to Newton pursuant to § 559.115.3 (particularly a statutory discharge) was contingent upon conditions that were not met. The authority to conduct a hearing to consider (or to ultimately grant) probation was not in the control of the DOC. Newton did not therefore present a justiciable issue in his declaratory judgment action.

12

It is undisputed that Newton failed to complete the program in the 120-day period. Newton was withdrawn from the ITC program on April 24, 2015, when the Sentencing Court entered its order denying probation and ordering continued execution of his sentence.[6] Newton waited over a month (until June 1, 2015) to file his motion challenging this determination and asking the Sentencing Court for reconsideration of its ruling. As a consequence, by the time his motion came before the Sentencing Court (June 3, 2015), the 120-day period in which the Sentencing Court had authority to grant probation under § 559.115 had expired according to the calculation of the DOC and had just one day remaining before the June 4, 2015, date that Newton had correctly argued.[7] Even were the Sentencing Court to have agreed with Newton as to his delivery date, there would have been no meaningful opportunity for Newton to complete the ITC program.

Even though the DOC erred in calculating the start date of his 120-day term for the Christian County sentences, Newton's only possible "legally protected interest" under § 559.115.3 was his loss of the *opportunity* to complete the ITC program, and, even more remote, his opportunity to receive probation. The assertion that Newton would have successfully completed the remaining thirty-two days of the program is mere speculation that does not entitle him to the relief he requests (declaration of his entitlement to a statutory discharge to probation

---

[6] There was some confusion at oral argument about whether Newton completed all but five days of the program. A close examination of the record makes clear that he was withdrawn from it immediately upon the execution of his sentence.

[7] Had Newton immediately sought to correct the DOC error after it generated the April 15, 2015, Court Report Investigation, he might have presented the issue to the Sentencing Court before it executed his sentence (nine days later on April 24, 2015) and before he was withdrawn from the ITC program. The Sentencing Court held a hearing two days after Newton filed his Motion to Reconsider its denial of probation; so clearly there was an opportunity to bring the issue before the Sentencing Court quickly. Alternatively (or simultaneously) he might have sought a timely writ compelling the DOC to correct its error in the calculation of the 120-day period, and requiring the DOC to allow him the opportunity to complete the ITC program. Hopefully, with our clarification regarding the correct manner to calculate the 120-day period, this will not be a recurring issue.

13

or entitlement to a hearing to determine whether he is entitled to probation). § 559.115.3.

Moreover, Newton's request for a hearing to determine his entitlement to probation would require that we compel the Circuit Court of Christian County (not a party) to undertake an action (a hearing to consider whether to grant probation after the 120-day period has expired) which it does not have authority to do.[8]

The DOC report, which calculated the wrong start date and indicated that Newton would not be able to complete the program "through no fault of his own" also indicated, in very clear terms, that Newton should be denied probation. The DOC report highlighted that his past performance on probation was "poor," citing criminal violations, contact with a victim of domestic violence (when prohibited from such contact), and absconding from supervision. The

---

[8] "[I]n a criminal proceeding, once judgment and sentencing occur, the trial court has exhausted its jurisdiction, and subsequent proceedings will be considered a nullity. The trial court can take no further action except as otherwise expressly provided by statute." *State ex rel. Johnston v. Berkemeyer*, 165 S.W.3d 222, 224 (Mo. App. E.D. 2005) (internal citations omitted).

This issue was also examined by this Court in *Duly v. Heflin*, 873 S.W.2d 932, 934-35 (Mo. App. W.D. 1994):

> Pursuant to sections 559.100 and 217.650, the general rule is that the circuit court has jurisdiction to grant parole to a defendant already confined under a sentence by the court for an offense over which the court has jurisdiction. Therefore, pursuant to the general statutory scheme, the circuit court retains jurisdiction for purpose of parole.

> However, when a person is sentenced to the custody of the department of corrections, the state board of probation and parole is solely empowered to determine parole. § 217.655. The only exception to the authority of the state board of probation and parole is provided under section 559.115, which grants the circuit court authority to grant probation to a defendant any time up to 120 days after he has been delivered to the custody of the department of corrections.

> ***In accordance with the statutory scheme, the circuit court loses jurisdiction over parole of a defendant, sentenced to the department of corrections, after 120 days.*** However, the circuit court retains jurisdiction over parole of a defendant sentenced to a county or city jail.

(Emphasis added.) (limited by *State ex re. Nixon v. Russell*, 129 S.W.3d 867 (Mo. banc 2004) on other grounds, since abrogated by amendment of statute.).More recently, following the clarification of authority and jurisdiction set forth in *Webb v. Wyciskalla*, 275 SW.3d 249 (Mo. banc 2009), it has been determined that, where an inmate has successfully completed an ITC program (thus entitling him to a statutory discharge), a sentencing court lacks **authority** to conduct a hearing and deny probation after the 120-day period has expired. *State ex rel. Valentine v. Orr*, 366 S.W.3d 534, 541 (Mo. banc 2012).

14

DOC report noted "Newton's victimization of a juvenile is particularly troubling, especially as he took no accountability for his actions and denied that he had ever engaged in sexually offending behavior."

Despite the positive accounting of Newton's participation in the ITC program, the Sentencing Court followed the DOC recommendation and denied probation. Even had the DOC correctly calculated Newton's 120-day period and had then also determined Newton was entitled to statutory discharge to probation, the Sentencing Court still would have had an opportunity to conduct a hearing 90 to 120 days from February 4, 2015 (May 5 to June 4, 2015), to have determined whether to deny probation. In addition to speculating whether Newton would have completed the ITC program to the DOC's satisfaction, granting him the statutory discharge to probation he now seeks would also require speculating whether the Sentencing Court would have allowed the statutory release to probation.[9]

In *County Court of Washington County v. Murphy*, 658 S.W.2d 14, 16 (Mo. banc 1983), the Court said:

> "No justiciable controversy exists and no justiciable question is presented unless an actual controversy exists between persons whose interests are adverse in fact…. Plaintiff's petition [for declaratory relief] must present a real and substantial controversy *admitting of specific relief*….The question is justiciable only where the judgment will declare a fixed legal right and accomplish a useful purpose. Plaintiff must present a state of facts from which he has present legal rights against those he names as defendants with respect to which he may be entitled to some consequential relief immediate or prospective."

---

[9] Newton asserts that the Sentencing Court's mistaken belief that it lacked jurisdiction to grant probation (on June 3) caused him to be denied probation. While the Sentencing Court did find that it was without jurisdiction to rule on Newton's motion, it also concluded, as a separate basis for denying Newton's Motion to Reconsider, that Newton "failed to complete his program within the time that was required, so for that reason there's no hearing that's required."

15

*Id.* (emphasis in original) (quoting *State ex rel. Chillcutt v. Thatch*, 221 S.W.2d 172, 176 (Mo. banc 1949)). A declaratory judgment requires "a real, substantial, presently-existing controversy as to which specific relief is sought….a legally protected interest…subject to immediate or prospective consequential relief.… [And] the question presented by the petition must be ripe for judicial determination. A petitioner who satisfies all three of these elements must also demonstrate that he or she does not have an adequate remedy at law." *Charron v. State*, 257 S.W.3d 147, 151–52 (Mo. App. W.D. 2008) (quoting *Northgate Apartments, L.P. v. City of North Kansas City*, 45 S.W.3d 475, 479 (Mo. App. W.D. 2001).

In *Gettings,* our Court set out the circumstances where an offender is entitled to bring a declaratory judgment action to determine whether a statute has been improperly interpreted in violation of their liberty interest:

> State statutes and regulations governing parole can create a constitutionally protected liberty interest in parole, however, if they specifically mandate that parole must be granted when certain criteria are met. Yet, even in such cases, a liberty interest is not implicated unless and until statutory and regulatory criteria for release have been satisfied.

*Gettings,* 950 S.W.2d at 9 (internal citations omitted).

Here, Newton requests that we order his statutory release to probation, or, in the alternative, that he be provided a hearing as required by § 559.115.3. However, he fails to demonstrate facts entitling him to either of these remedies. He has not, and did not, complete the ITC program. Completion of the ITC program is a necessary condition to a provisional grant of statutory release or to a hearing before a court considering denial of such statutory discharge. § 559.115.3. Newton cannot now ask us to craft a remedy to which he was not entitled under the statute. "'Once judgment and sentencing occur in a criminal proceeding, the trial court has exhausted its jurisdiction. It can take no further action in that case except when otherwise

16

expressly provided by statute or rule.'" *Orr*, 366 S.W.3d at 541 (quoting *State ex rel. Mertens v. Brown,* 198 S.W.3d 616, 618 (Mo. banc 2006)). This Court cannot grant relief which Newton was not entitled under the statute. *Id.*

Even though Newton correctly asserts that the DOC miscalculated the 120-day period, this did not present the Trial Court with a state of facts from which he had present rights against the DOC (the only named defendant) entitling him to consequential relief. *County Court of Washington*, 658 S.W.2d at 16.

Even if the 120-day period had been correctly calculated, Newton would not necessarily have been entitled to a statutory discharge to probation. This did not present the Trial Court with "a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief" and is more in the nature of a "hypothetical situation" requiring speculation as to Newton's eventual successful completion of the ITC program and the Sentencing Court's action (or inaction in the case of a statutory discharge) allowing probation. *Missouri Ass'n of Nurse Anesthetists*, 343 S.W.3d at 353-54.

Points I and III are denied.

Because denial of points I and III is dispositive of Newton's appeal, we need not address Newton's second point on appeal claiming that the trial court erred in finding his petition was barred by the statute of limitations.

### Conclusion

Judgment of the Trial Court is affirmed.

/s/ *Thomas N. Chapman*
Thomas N. Chapman, Judge

All concur.

17